May it please the Court, Michael Collins for the appellants in this action. The issue is quite simple, we believe, or the issues are quite simple, although the trial court decision did not go our way. In essence, did the trial court correctly dismiss this case under Rule 12d3 of the Federal Rules of Procedure, based on the doctrine of forum non-convenience? That turns on whether the trial court correctly determined that the forum selection clause in the parties agreement applies to appellants' claims in this action. So we have three levels here to get into. Did, and we assert four claims in our complaint. We assert a copyright claim, a declaratory judgment claim, a breach of contract claim, and a conversion claim. So first issue is whether the claims at issue are subject to the forum selection clause at all. If they're not, then there's no reason to go forward. If they are, there's a couple exceptions to applicate a forum selection clause, such as fraud or coercion. We're relying on coercion. Two is the, if we're trying to repudiate this, and if we're not allowed to have the forum selection clause not enforced as to us, will we lose our day in court? And lastly, whether public policy requires that the forum selection clause not be applied in this case. Counsel, can you start with the fraud or coercion argument? Sure. I guess what I would say is ours is more of a corrosion argument, Your Honor. And we believe that we submitted sufficient evidence as to the coercion, undue influence that occurred in connection with this agreement. There was a prior agreement between the parties. It had a similar or same forum selection clause. Then there was a new contract entered into that. My clients did not want to live with that forum selection clause that existed before in the new agreement. They asked that it be revised, taken out, supplemented, amended to provide for jurisdiction in the United States, especially since we assert a copyright claim under federal United States law. In record excerpts pages 39 through 49, David Reichelt, one of the representatives of the appellant, sets forth in detail on record excerpt page 45, paragraph 25 of a declaration he submitted about the undue influence, the coercion, the duress that he had to, that was imposed on him that caused him to enter into this agreement, this second agreement. He states in detail in this paragraph 25. And in essence, he said is he was told if he didn't sign the agreement with this forum selection clause, they were going to shut the business down. There would be no revenues and all game over for my clients, the appellants and Mr. Reichelt. That simply, Your Honor, certainly creates a question of fact that should have required focused, limited discovery, and if necessary, an evidentiary hearing. And in essence, Your Honor, we believe that the trial court, well, we have some complete respect for all courts, this trial court, certainly this court. But sometimes we do make mistakes, and we believe that he went on and determined credibility or that somehow there wasn't sufficient evidence presented in this declaration by Mr. Reichelt. But if you read paragraph 25, it's detailed about what he was told, how he was threatened. There was an attorney. Yes, there was. Okay. What were his options at that point in time? He couldn't just walk and say, okay, forget it. We're not doing this because then you'd still have the first agreement with the forum selection clause. My client is obviously a very bright man, has done well professionally, financially, but he's not a lawyer. He was not schooled in legal documents like that, so he entered into the first one. So if he walked away based on those threats, where would he be? He'd be in the same place with the first agreement with the forum selection clause. Counsel, are you relying on the allegation also that Fortify threatened to withhold the payments that he was due under the first or second agreement? Yes. Yes, Your Honor. Absolutely. What did the district court do with that allegation? Well, Your Honor, he did address it, so we cannot say that he missed it at all. And we do have it right here, Your Honor. Let me go to the right page. Right here. And he does discuss it on pages 12 to 14 of his decision. And, Your Honor, I think he just determined, well, it wasn't specific enough for evidence. And our evidence was basically the declaration of Mr. Reichold, although we said that we could have presented additional evidence if given the opportunity in connection with discovery and in connection with an evidentiary hearing. But, Your Honor, it seems he does address it, but we don't think he gave the proper weight to it. And since there was not an evidentiary hearing, he should have taken the allegations and given us all reasonable inferences. And if he had done so, we believe it was more than sufficient. It was probably sufficient that we should have won on the argument, but it certainly was sufficient to go through an evidentiary hearing. Counsel? Yes. So we have the original operating agreement, and that's in place, and the game is up and running. The parties are living with it, and that contains a form selection clause. And your client's getting some money from that agreement, correct? Yes. All right. Now, your client wants to change the existing agreement in a new agreement for more favorable terms. How is that coercion? We're not going to do that unless we have a form selection clause. So what? Well, then we'd be here challenging the first form selection clause if there was litigation. Well, doesn't the case law require you to specifically demonstrate that there was coercion or fraud related to the inclusion of the form selection clause specifically, not just generally about the agreement? Well, yes, Your Honor. As to the second agreement, there was. Mr. David Reichhold, in his declaration, paragraph 5, goes into that. The discussions were focused on the form selection clause. He didn't want it in the second agreement, saying that, no, that's not right. We should be able to present those in the United States. They just didn't say—it was not like they just said no. They also said, oh, by the way, and was threatened. And the attorney for the other side, with all due respect to that attorney, yelled at him and said, this is the way it's going to be. So that's where the coercion comes in, Your Honor. And with respect to the question about what the trial court did with it, the court refers to color-switching general and conclusory allegations that fortified employee economic pressure, took advantage of the unequal bargaining position of the parties, and exerted undue influence, in essence, duress coercion. So we believe that evidence was more than sufficient. I believe that the district court asked for more evidence of that, and counsel represented they would provide additional evidence within two weeks, but nothing else was provided. Is that your understanding of what happened in the district court? Yes, Your Honor. We did present supplementary briefing. We have Mr. Reichelt's declaration that actually sets it up, we think, very well for all the reasons, all the facts that existed that he was aware of and he would have been the one probably most aware. I'm not quite sure I understand what the district court did with the allegations of Mr. Reichelt's allegation and declaration. Did he just not credit it or did not think it was specific enough? By particular, I'm talking about the allegation that Fortify threatened to withhold the funds that he was owed under the prior agreements. So, Your Honor, I have to get a context of reading of one sentence from paragraph 25 of the declaration. She threatened us that if we did not accept the agreement as it was, including the forum selection clause we had requested to be changed, we would lose all the users, the game would be taken off the app stores, and we would lose all music and everything else. And since they controlled it, they took that threat very seriously, my clients did, that he would lose everything if he did not sign that agreement. Now, the trial court, Your Honor, then says… Why wasn't Fortify within their rights to do that if they ended the agreement? I apologize, Your Honor, I did not hear that. Why is Fortify not within their rights to end the agreement at that point? Well, I guess they could end the agreement and we could go our separate ways. We terminated the agreement, so the agreement is terminated. I guess they couldn't, too. But then we'd be either walking away, both of us, or we'd be in litigation like we are here today. And so that is, we're here today because of the issue of the forum selection clause. That's a possibility. But, Your Honor, again, when I go to pages 13 and 14 of the trial court's decision, for, finally, for a party to escape a forum selection clause on the grounds of fraud, it must show that the inclusion of that clause in the contract was the product of fraud and coercion, quoting from the Richard decision. Then, next sentence. Here. So we found our allegations to be general and conclusory. Well, it's just not allegation, Your Honor. There was evidence by the Mr. Reichelt declaration. So, and we believe it's detailed evidence, Your Honor. Especially the sentence that I read a little bit earlier. So we believe that determination that the evidence we submitted was too conclusory is, we respect, is wrong. And under abuse of discretion standard, either the trial court, to reach that conclusion, must have applied an incorrect legal standard. Now, as far as factual findings, that, you know, great difference is given to a court's factual findings. But there really shouldn't have been a factual finding here because that should have had an evidentiary hearing. They could say, if it truly was conclusory, in general, yes, we could lose. But that's not what these, we respectfully submit that's an erroneous legal conclusion. I don't understand. This is Judge Schroeder. What else, if, isn't it kind of a classic bargaining position as to particular clauses to say this is, this one is not negotiable. We can negotiate on all these other things, but this we, we're not going to negotiate on. How is that coercion? Well, I guess, Your Honor. You don't have to change this when there's no deal. Right. But then besides that, just saying, hey, there's no deal, we'll live by the old one, you sign this one, or we live by the old one, or we do something else, like litigate. But here in the declaration of Mr. Reichold, paragraph five, he details how their lawyer, no disrespected lawyer, she threatened us that if we did not accept the agreement as it was, including foreign selection clause, we would lose all the users. The game would be taken off the app stores, and we'd lose all music and everything else. And those threats, they took to be real. So that's the problem here. It wasn't just we're going to live with the first agreement or we're going to sue you. That's the kind of pressure where we believe is undue. It causes duress. Counsel, did the court in the UAE ever issue a decision in this case? My understanding is no, Your Honor. It's still going on. Still going on. And, again, this is not about disrespect of the courts in UAE. I'm sure they're fine courts. We have counsel over there. They have counsel over there. And, of course, Your Honor, I would concede that as far as the application of the foreign selection clause, it would apply to the breach of contract. Probably would apply to the conversion. So we're now down to, as the court has looked at, to the issue of whether there was coercion. But if there was no coercion as to that, to this agreement, well, yes, the agreement would apply to a couple of the claims, but it would not apply, the agreement, the foreign selection clause would not apply to our copyright claim based on a derivative work theory or our D.J. claim, declaratory judgment claim, as you'd say, to the extent it's based on a copyright claim based on a derivative work theory. And the trial court, and we're really pretty much focused on our copyright act claim based on derivative work theory because we think it's so clear that the foreign selection clause in this thing, in this agreement, does not apply to that claim because we're not going to refer to it at all, Your Honor, to this court. Thank you, counsel. Your time is up. Ms. Smith, if you want to proceed. Good morning, Your Honors. May it please the court, Mariners Borman-Smith of Kilpatrick, Townsend, and Stockton, on behalf of defendant Anapeli Fortify Gaines. The district court correctly dismissed the color switcher appellant's complaint in this case. As the Supreme Court has held in the Atlantic Marine construction case, foreign selection clauses should be enforced in all but the most unusual cases because the interest of justice is served by holding the parties to their bargains. This is not one of those unusual cases. In deciding this appeal, it's important for this panel to remember the facts here against the backdrop of the parameters that were placed on the district court, specifically the strong presumption of validity in favor of upholding foreign selection clauses so that the parties can get the benefit of the bargain, the importance of foreign selection clauses in international commercial transactions like this one so that you eliminate the uncertainties when it comes to where the disputes are going to be resolved. The heavy burden that's placed on the party challenging the foreign selection clause, where they must, in this instance, show clearly that enforcement was either unreasonable or unjust, or that the clause is invalid under fraud or overreaching or coercion. And then also the significant... Counsel? Yes, Your Honor. Could you address opposing counsel's argument about the coercion involved here and the district court's analysis of the evidence submitted in the form of the declarations? My understanding was there was a proceeding. The color switch counsel represented they had additional information to present. The district court said, how long do you need? They said, two weeks. And they submitted these declarations. That was it. Did the district court analyze those declarations properly under the right standard? Yes, Your Honor. First of all, your understanding of the proceedings is correct. At the motion to dismiss hearing, counsel for color switch indicated that they had additional evidence of coercion. They wanted to submit that. And they said they asked for either a sir reply or an evidentiary hearing. The judge allowed them to have a sir reply, gave them the two weeks that they requested to provide additional evidence. And then when they did provide their sir reply, they didn't provide any additional evidence. If you look at the excerpts of record page 13, this is the district court's decision. In footnote 3, the district court specifically says, color switch was allowed to file a sir reply following the July 17, 2018 hearing. Counsel for color switch represented that, quote, it has additional eyewitness and additional documentary evidence that it can present to establish that there was fraud or coercion by Fortify in the procurement of the publishing agreement. The court then goes on to say, however, color switch failed to allege any additional facts in its sir reply, nor did it attach any documentary evidence to that submission, demonstrating that the inclusion of the form selection clause in the publishing agreement was the product of fraud or coercion. Counsel, what did the district court do with Mr. Reichold's allegation that Fortify threatened to withhold his funds that he was due under the prior agreements unless he signed the new publishing agreement? First of all, what the court did was it determined that the allegations that Mr. Reichold was making in his declaration were general and conclusory. And then the court applied the law. But how is that a general and conclusory allegation? It seems that there was a specific, you know, under his words, threat that he would not be paid what he was due unless he signed the new agreement. Well, there was no necessity to sign the new agreement, Your Honor, and that the old agreement was still in place. And it had a termination date of the end of 2017. But if they threatened to withhold his payments, isn't the allegation that they threatened to withhold his payments under the prior agreements? The allegation was that there would be no agreement left, so he wouldn't get the payments anymore. He wouldn't have the same users because at the end of the day, Colorswitch would not be being published by Fortify. It's a business discussion. It's not a situation where they're threatening him or coercing him to enter into an agreement. More importantly, and equally as important, is the fact that there was no coercion to specifically put this particular provision, the form selection clause provision, into the contract. What he's saying is that they threatened that there wouldn't be an agreement anymore, including the form selection clause. And that's different than— But, Counsel, isn't he alleging that they also threatened to withhold his payments that were due under the old agreements? I think it's paragraph 30 of his declaration. In paragraph 30 of his declaration, he says that— He basically is saying that he would lose everything. The game would be taken away off of the App Store, and Colorswitch would lose its music, et cetera. The fact that he's saying that he would lose money, it just doesn't— Basically, the court could reasonably infer that that meant that he was not going to make the money that he was making before. And when you're not in an agreement anymore, you're not going to make the money that you were making before. That's true. There will be no deal. Right. The deal will be taken off the table because they won't be in that agreement. It's also important to note that the parties always had the right to terminate this agreement. And eventually, the subsequent agreement that he did enter into, he did terminate. And it was of his own volition. The other thing that is important to note here— Counsel, I'm sorry. If I could just return you to paragraph 30. He says, Right. And what he said, what counsel said was that they would provide documentary evidence of that. And they didn't provide any documentary evidence or any corroborating evidence whatsoever. And their SIR replied they had the opportunity to do that. Why isn't his declaration enough? Under Peterson, we reversed on a Foreign Selection Clause matter like this based off of declaration. His declaration is not sufficient because his declaration makes general conclusory allegations. And the court was not abusing its discretion to say that because there was uneven bargaining power that there was no coercion. The case law clearly states that. It states it throughout the Ninth Circuit. The other thing that's important to note here is that ColorSwitch actually asserts this same agreement in its own complaint. What they're doing is they're saying that there's a breach of the agreement. They're asserting the publishing agreement. And now, in an attempt to get out of the Foreign Selection Clause, they are saying that the Foreign Selection Clause is not valid or enforceable. And the district court had that in front of it, and it doesn't make sense. Either the contract is not valid and enforceable, or it is. And again, it's important to note that the district court allowed for additional evidence to be put in here, and it wasn't put in. So there's not an abuse of discretion in this instance. What's going on in Dubai? So in Dubai, the way it works in Dubai is the court brings in the case, and then the court designates experts to get discovery in the case. So they have two technical experts in place and a third accounting expert in place. They have had submissions since July of 2018, where the parties have had evidentiary hearings. They've appeared in person. They've provided documentary evidence, and they've provided all of that to the experts. Then the experts issued their decisions, which they've already done, and the parties get the opportunity to question their decisions or point out issues that they have with their decisions. The parties have done that now. They've gone back to the experts with those objections or opinions as to why the expert opinions are right or wrong, and the experts are relooking at the issues. I believe they're at the point where the experts are almost done and are going to reissue their opinions, and then all of that gets given to the judge in Dubai, and the court then looks at what the experts have determined to make its determination of the case. It's been going on for how long? It's been going on since July of 2018. So it's deep in its proceedings. Thousands and thousands of pages have been produced. Mr. Reichelt and the folks from Fortify on the other side have gone to hearings. They've gone to hearings together. They've gone to hearings separately. They've provided evidence, and they've objected to each other's evidence. Definitely it's clear that ColorSwitch is getting its day in court in Dubai. The other arguments that ColorSwitch has made in this case is that basically that whether there is a copyright claim, they've questioned whether copyright claims fall within the scope of the Forum Selection Clause. This court hasn't specifically opined on that issue, but it has in the Minetti-Ferro case held that contractual Forum Selection Clauses can apply to non-contractual claims where resolution of the claims relates to the interpretation of the contract. Numerous district courts in the circuit have applied the holding of Minetti-Ferro to copyright cases. We've cited the Graham Technologies case out of the Northern District, Kistrell and Bagdasarian out of the Central District, and others. Additionally, the Ninth Circuit has applied the analogous forum nonconvenience doctrine to copyright cases. That was done in the Creative Technology case where the Ninth Circuit recognized that simply because a case is a copyright case does not mean that the U.S. district courts are granted exclusive jurisdiction over that case. There, the court upheld the district court's granting of a motion to dismiss based on forum nonconvenience and allowed the copyright case to be decided in Singapore under Singaporean laws. Counsel, could I interrupt you for just a moment and take you back to Omite's question? To the extent that we read what was said in paragraph 30, whatever it is, that there is a claim that there was money already owed that was threatened to be withheld. Is it your position that the district court provided an opportunity for that to be documented and that there could have been documentation to show the figures of what had been owed that was the subject matter of the threat and that was not produced? That is my position, Your Honor, that they could have provided that evidence. They didn't provide that evidence. Counsel, under the 12B3 standard, was the district court required to give, resolve any factual disputes in favor of the nonmoving party? Yes, any factual disputes do get resolved in favor of the nonmoving party, Your Honor. So why wouldn't that dispute be resolved in favor of Mr. Reichelt's allegation? Mr. Reichelt simply makes that statement. He does not have any evidence to support it, and he was given the opportunity to provide the evidence to support it, and he didn't provide that evidence, Your Honor. He said that he had documentary evidence. He was a witness to the statement, so why is that not sufficient evidence? Well, the other issue here, Your Honor, is that he was not forced to and did not have to enter into this agreement. He could have chosen not to enter into the agreement and terminate the agreement or stick with the old agreement until this agreement terminated. Well, not if Fortify threatened to not pay him, as he's alleging. Well, but what his complaint says, his complaint says in paragraph 3, says that Color Switch decided that it would honor the agreement it made, but that it would terminate the agreement when it had the ability to do so. So that's in front of the district court. He did not feel threatened. If he felt threatened and coerced, he wouldn't have said in his complaint that they decided to honor the agreement and then terminate it later. This is a classic negotiation. He didn't like what was said to him in the negotiation, but it's a classic negotiation where the parties have bargaining power. Okay, so it's basically our contention that the claims here do fall within, the claims of the complaint fall within the forum selection clause. Basically, all the claims relate to the rights and duties that are set out in the publishing agreement. They need to be decided by looking at whether the parties were in compliance with their contractual obligations, and you can't separate the two out from one another. We've already talked about Color Switch having its day in court. There's no public policy here either that the court should put aside the forum selection clause. In fact, the public policy is that once the parties agree to a forum selection clause, it should be maintained and kept in place. So District Court did not err in its decision. It didn't abuse its discretion in enforcing the forum selection clause. Thank you, counsel. Mr. Collins, I'll give you one minute if you want to respond to anything. You're on mute, Mr. Collins. Yes, Joanna, thank you. Paragraph 26, Mr. Reichholdt, this declaration, he states, Jaffer told me many times that if I did not accept the agreements as is, including the publishing agreement, that's a paraphrase, quote, that I would lose all users, game modes, videos, and keyword recognition on the app store. In short, everything I had worked so hard to build. Paragraph 30, as the court has noted, we properly withheld, fortified and properly withheld payment under the then existing agreement, policy telling us that we had to enter into a new agreement to be paid. Next page, same paragraph. In reliance on this fraudulent representation and coercion, believing that it was necessary to sign a new agreement to obtain the payments we were due, and under the influence of the threats described, I signed it. Nothing conclusory, nothing general about paragraph 26, paragraph 2030. How much money was that? Do we know? How much money was that? It would be in the millions. I don't have a number in front of me, but it would be. You never supplied any documentation of what that was. No, but also, just besides the money, which is very important, obviously, there's also the issue of losing his users, game modes, videos, and keyword recognition on the app store. In essence, the game's gone. And then people move on, and the gamers move on to the next big thing. There's nothing here for us on this. So there's no deal? No. They're saying we would have lost it if we didn't sign this, even though under the first agreement, we were fine, but we wouldn't get paid, and that we would lose everything if we didn't sign this agreement. Customers, users, the ability to get our game out there. If the game goes away for a while, there's a lot of games out there, and people move on. So not just the money that we were owed under the agreement at the time, the prior agreement, which I would say would be significant. I don't have a number. No, we don't. I don't have a record. But also losing this livelihood going forward and losing the ability to keep this game out there for people to enjoy, which causes people just to walk away to the next one. Not worth the time. Thank you, counsel. Thank you. Thank you, counsel. This case is submitted. We can move to the next case.
judges: Schroeder, Bumatay, Morris